## LAWLESS et al. v. MEYNIER.

(Circuit Court of Appeals, Fifth Circuit. December 5, 1893.)

### No. 140.

SEAMEN—WAGES—CONTRACT OF HIRING—PILOT—TERM.

Where the contract under which libelant entered the service of the respondents as a steamboat pilot specified nothing as to the term for which he was employed, it is a hiring for an indefinite period, so long as it shall be satisfactory to both parties, notwithstanding that respondents stated that the work of the steamboat was expected to be continuous, varying in kind with the season; and libelant, on being discharged, is only entitled to wages for the time that he served.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

In Admiralty. This was a libel by Charles Meynier against T. C. Lawless and William Kyle for wages. There was a decree for libelant, and respondents appeal.

J. D. Grace, for appellants.

Richard De Gray, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. The libelant had quit the steamer Barmore, and wrote the appellants, who were then building a small steamer to work "on and about the Teche," with a view to making arrangements with them as pilot on their boat. Some time after this they wrote him:

"Franklin, La., September 26, 1891.

"Mr. Chas. Meynier, Patterson, La.—Sir: We will need the services of a steamboat pilot about Oct. 15th. Our boat will be employed in towing syrup barges, &c., but the job will be permanent, as we intend to use the boat jobbing in the bayou. As you once offered us your services, we now write to learn what salary you will come for. An early answer will oblige,

"Yours, truly,                                          Lawless & Kyle."

To which he replied:

"Patterson, September 27th, 1891.

"Messrs. Lawless & Kyle, Franklin, Louisiana—Dear Sir: Your welcome epistle is at hand, in which you informed me that you will be in need of a pilot for your boat in about October 15th, and you wished to know my terms. In answer, I will inform you that I am idle at present, and am open for employment. I have a few places in view, but not very positive so far. Should you wish my services as pilot on your boat, I would be glad to accept your offer at the rate of sixty dollars per month. I am a competent master and pilot, and therefore will offer you first-class work in every respect. I am a sober man, and steady habits, and hope to give you satisfaction, should you give me a fair trial. Hoping to hear from you soon, I am,

"Yours, obediently,                                          Chas. Meynier."

The parties were not personally known to each other. About three weeks after the date of these letters, they met at Franklin and were introduced. The libelant, in his testimony, says:

"I commenced at once speaking to him about my letter I wrote to him, and in reference to his letter, which I told him I had accepted, and asked him if it would be all right, and he told me, 'Yes,' that it would be all right; and he

told me to take charge of this boat. He said: 'I want you to tow syrup tanks in barges, and after that I want you to go and deliver my lumber to the sawmill, and then you can pick up all jobs you can find in the summer.' I then said: 'How is it about the engineer of the boat? Should he be without work?' And he said: 'I can always find work for the engineer at the sawmill at any time the boat will be idle.' I said: 'I accept this place at sixty dollars a month, because I prefer to work this way, and be sure to support my people. It was better than to run chances at one hundred dollars, and probably get out of work in summer.'"

### T. C. Lawless testifies:

"Meynier was hired by me verbally at Franklin, Louisiana, on October 4th. Nothing was said or done in regard to permanent employment of Charles Meynier. I saw Charles Meynier personally, and, as we [Lawless & Kyle] needed a competent master and pilot for our steam towboat, Ouida, I told him [Meynier] so. I said to him that the towboat Ouida would be employed during the sugar season to tow barges of syrup and tanks to Alice C. and Franklin refineries, and that we proposed to use the Ouida as a regular towboat in and about Bayou Teche; that we were just then in need of a good master and pilot for the Ouida. He [Meynier] then offered to furnish us his services as master and pilot of the towboat Ouida, saying that he would give us satisfaction, as he was first class in every respect. I requested him to state what wages he would come for, and he said he would furnish us first-class service as master and pilot of towboat Ouida at wages at the rate of sixty dollars per month. I then said to Charles Meynier that unless he [Meynier] suited us, and could do the work for which he would hire to us, that I would not have his services at any price. He still claimed to be a first-class master and pilot of towboats. This being satisfactory, I, as business manager of the firm of Lawless & Kyle, engaged Charles Meynier to serve us as master and pilot of steam towboat Ouida, and informed him that I would notify him when we would need him."

Some time after the personal interview, the appellants wrote libelant:

"Franklin, La., October 24th, 1891.

"Mr. Chas. Meynier—Dear Sir: As we will commence towing syrup to Alice C. refinery on Monday, October 26, will like to have you come up on Sunday, and fill the position of pilot, as per our agreement with you some time ago. We did not succeed in getting the Ouida ready, but will use the tug L. W. Brown for a few weeks, until we get the machinery fitted on our boat. Mr. Lawless will accommodate you with board and lodging for us until the Ouida is ready. Therefore please call on him on Sunday when you come. Hoping that you will cause us no disappointment, we are,
"Yours, truly,                                    Lawless & Kyle."

The libelant commenced work as requested on 26th October, and continued to work for the period of one month and twenty-two days, when he was discharged. He alleges that he was discharged without cause. He had been paid one month's salary, and, on his discharge, was tendered $44 in full pay for his services, which he declined to take as tendered, but afterwards did receive, protesting that the balance of a year's salary, at $60 a month, was due him, because of his discharge without cause. To recover that balance, this libel is exhibited.

From a careful consideration of all the testimony in the record, we conclude that it does not show an employment of the libelant for any definite period. The work was to be permanent or continuous through the year, differing in kind with the season. This was a feature natural and proper to be considered and mentioned

in their negotiations. They might, of course, have made an express contract for a year or other definite period. It is evident to us that they did not make such an agreement; that the employment was to continue indefinitely, as long as it was satisfactory to both parties. In this view of the proof, the libelant having been paid for the time he worked, his libel should have been dismissed. The judgment of the district court must be reversed, and the libel dismissed, at the cost of the libelant.